IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SHANNON DEGEORGE,** | : | CIVIL ACTION NO. 1:23-CV-568 |
| | : | |
| **Plaintiff** | : | (Judge Conner) |
| | : | |
| v. | : | |
| | : | |
| **MICHAEL KNAPP,** *et al.*, | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a prisoner civil rights case filed pursuant to 42 U.S.C. § 1983. Plaintiff, Shannon DeGeorge, claims that defendants violated his rights under the First Amendment by retaliating against him for the filing of grievances. Defendants have filed a motion for summary judgment. The motion will be denied and the case will be scheduled for an evidentiary hearing to determine whether DeGeorge exhausted administrative remedies.

**I.   Factual Background & Procedural History**[1]

DeGeorge has been incarcerated at SCI-Rockview at all relevant times. He filed grievances against defendants Seymour and Knapp on September 2, 2022, and

---

[1] Local Rule 56.1 requires that a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56 be supported "by a separate, short, and concise statement of the material facts, in numbered paragraphs, as to which the moving party contends there is no genuine issue to be tried." M.D. PA. L.R. 56.1. A party opposing a motion for summary judgment must file a separate statement of material facts, responding to the numbered paragraphs set forth in the moving party's statement and identifying genuine issues to be tried. Id. Unless otherwise noted, the factual background herein derives from the parties' Rule 56.1 statements of material facts. (See Docs. 25, 31). To the extent the parties' statements are undisputed or supported by uncontroverted record evidence, the court cites directly to the statements of material facts.

September 6, 2022, respectively. (Doc. 25 ¶¶ 3, 13; Doc. 31 ¶¶ 3, 13). The grievance against Seymour was assigned to Knapp for review on September 6, 2022. (Doc. 25 ¶ 9; Doc. 31 ¶ 9).

On September 7, 2022, DeGeorge's cell was searched by defendant Maines. (Doc. 25 ¶ 42; Doc. 31 ¶ 42). The parties dispute whether any contraband was found during this search: defendants assert that 81 pages of pornography were found during the search; DeGeorge contends that no contraband was found. (Id.)

Shortly after the search, Knapp allegedly came to the cell and informed DeGeorge that he had been assigned to review the grievance against Seymour and that he was aware of the grievance DeGeorge had separately filed against him.[2] (Doc. 1 ¶¶ 17-18). Knapp purportedly told DeGeorge that if he did not "sign off" on withdrawing the grievances against him and Seymour that they would file misconduct charges against him. (Id. ¶ 19). DeGeorge refused to withdraw the grievance. (Id. ¶ 20). Knapp then allegedly told him that they would fabricate misconduct charges against him if he did not do so. (Id. ¶ 21). DeGeorge again refused and Knapp walked away. (Id. ¶ 22).

---

[2] The court incorporates this and other factual allegations from DeGeorge's complaint to aid the reader's understanding of the basis of his claims because defendants' Rule 56.1 statement of material facts does not address many of the factual allegations in the complaint. Any factual allegations for which the complaint is cited as support are provided merely to aid the reader's understanding of the case and shall not be construed as statements that the facts are undisputed or that they have been established as facts. Where a factual allegation has been admitted in defendants' answer, (Doc. 22), the court will cite both the complaint and the answer and treat the fact as undisputed.

Later on September 7, 2022, correctional officers Heverly and Holden allegedly removed DeGeorge's television and other personal property from his cell. (Id. ¶ 23). Heverly and Holden purportedly informed DeGeorge that Knapp had changed DeGeorge's housing classification to "4T"—which the complaint asserts is not a valid classification under Pennsylvania Department of Corrections policy—and that Knapp would be filing a misconduct charge against DeGeorge. (Id.)

At approximately 9:20 p.m. on September 7, 2022, DeGeorge received written notice of a misconduct charge alleging that Maines had found 81 pages of contraband pornography in DeGeorge's cell. (Doc. 1 ¶ 24; Doc. 22 ¶ 24). On September 9, 2022, the assigned hearing officer dismissed the misconduct charge, concluding that there was insufficient evidence. (Doc. 25 ¶ 47; Doc. 31 ¶ 47). Officials filed a renewed misconduct charge on September 9, 2022. (Doc. 1 ¶ 27; Doc. 22 ¶ 27). The assigned hearing officer dismissed the renewed misconduct charge on September 11, 2022. (Doc. 1 ¶ 28; Doc. 22 ¶ 28).

DeGeorge allegedly observed defendant Hayles enter his cell on September 11, 2022. (Doc. 1 ¶ 29). After observing this, DeGeorge searched his own cell and purportedly found 47 pages of pornography. (Id. ¶ 30). DeGeorge contacted an individual at the "Prison Society," who contacted the prison's security department on DeGeorge's behalf to report the presence of the pornography. (Id. ¶ 31).

Defendant Hayles and two other correctional officers were allegedly directed to search DeGeorge's cell on September 13, 2022. (Id. ¶ 33). During the search, Hayles allegedly told DeGeorge that, because the misconduct charges against DeGeorge had been repeatedly dismissed, he and the other defendants had planted

3

the 47 pages of pornography in DeGeorge's cell. (Id. ¶ 34). Hayles purportedly stated that because DeGeorge had found and reported the pornography himself, they now needed to confiscate it. (Id.) The pornography was allegedly confiscated and destroyed. (Id. ¶¶ 35-36). DeGeorge spoke with defendant Seymour about the planting of contraband in his cell shortly after this conversation and Seymour allegedly stated, "that there were consequences to filing grievances/complaints at Rockview" and that they would continue "these tactics" until DeGeorge ceased filing grievances and complaints. (Id. ¶ 38).

A third misconduct charge was subsequently filed and on this occasion the hearing officer found DeGeorge guilty of misconduct for the initial 81 pages of pornography allegedly found in his cell. (Id. ¶ 40; Doc. 22 ¶ 40). The hearing examiner allegedly stated that he "never would have dismissed the first two [grievances] if he was aware [DeGeorge] was a 'paper-pusher.'" (Doc. 1 ¶ 40). The examiner purportedly advised DeGeorge that he needed to "understand the consequences of grievances." (Id.)

On September 17, 2022, DeGeorge filed a grievance asserting that Hayles had planted contraband in his cell. (Id. ¶ 42; Doc. 22 ¶ 42). DeGeorge allegedly attempted to file a second grievance against defendants on September 25, 2022. (Doc. 1 ¶ 43). DeGeorge filed an inmate request to staff on October 2, 2022, inquiring as to the status of the September 25, 2022, grievance. (Id. ¶ 44). Prison staff responded, on October 25, 2022, that there was no record of any such grievance being filed. (Id. ¶ 45). DeGeorge asked Knapp about this request and Knapp allegedly responded, "we shredded that shit weeks ago, don't you ever learn[?]"

(Id. ¶ 47). The grievance against Hayles was ultimately denied because DeGeorge had correctly reported the contraband and had not been issued a misconduct for it. (Doc. 25 ¶ 37; Doc. 31 ¶ 37).

On October 20, 2022, DeGeorge was assaulted by defendant Akeem Page-Jones. (Doc. 25 ¶ 78; Doc. 31 ¶ 78). Reports from staff members who witnessed the assault indicated that DeGeorge had instigated the incident. (See Doc. 25 ¶¶ 79-83; Doc. 31 ¶¶ 79-83); Doc. 25-15). In a declaration attached to DeGeorge's complaint, however, Page-Jones declared that he had assaulted DeGeorge at the direction of defendant Knapp. (Doc. 1 at 11). According to Page-Jones's declaration, Knapp informed Page-Jones that he, Hayles, and other officers had been "retaliating" against DeGeorge and "setting him up." (Id.) Knapp was supposedly concerned that DeGeorge had proof of the retaliation. (Id.) Knapp allegedly told Page-Jones to stab DeGeorge and "hurt him bad." (Id.) Knapp purportedly promised Page-Jones that he would arrange to have the relevant surveillance footage destroyed, to have staff members attest that DeGeorge attacked Page-Jones first, and to support Page-Jones's claim of self-defense. (Id.) To sweeten the deal, Knapp also purportedly offered to recommend that Page-Jones be moved to a less restrictive housing unit. (Id.) Knapp also allegedly threatened that if Page-Jones did not assault DeGeorge, Knapp would oppose the move to a less restrictive housing setting and would tell other inmates that Page-Jones was working with prison staff. (Id.) After Page-Jones assaulted DeGeorge, Knapp allegedly told him that the "deal was off" because Page-Jones had not stabbed DeGeorge. (Id.) Knapp stated that Page-Jones was going to "take the heat" for the incident and that if he told anybody

5

about their agreement "he would get somebody to do something to [Page-Jones]." (Id.)

Following the assault by Page-Jones, DeGeorge was treated in the prison's medical department for an abrasion to his scalp and a nosebleed. (Doc. 25 ¶ 84; Doc. 31 ¶ 84). There is no record of DeGeorge filing any grievances related to the assault by Page-Jones. (Doc. 25 ¶ 88; Doc. 31 ¶ 88).

DeGeorge filed his complaint on March 28, 2023, and the court received and docketed it on April 4, 2023. (Doc. 1). He advances a claim of retaliation in violation of the First Amendment against defendants Knapp, Seymour, Maines, and Hayles. (Id.) DeGeorge seeks damages and injunctive relief. (Id.) Defendants answered the complaint on June 12, 2023. (Doc. 22). Following the close of fact discovery, defendants filed the instant motion for summary judgment on February 29, 2024. (Doc. 24). Defendants argue they are entitled to summary judgment because DeGeorge failed to exhaust administrative remedies and because his claim fails on its merits. (Doc. 26). Briefing on the motion is complete and it is ripe for review. (Docs. 26-27, 33).

**II.   Legal Standard**

Through summary adjudication, the court may dispose of those claims that do not present a "genuine dispute as to any material fact" and for which a jury trial would be an empty and unnecessary formality. FED. R. CIV. P. 56(a). The burden of proof tasks the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief. Pappas v. City of Lebanon, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); see also Celotex Corp. v. Catrett,

6

477 U.S. 317, 322-23 (1986). The court is to view the evidence "in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor." Thomas v. Cumberland County, 749 F.3d 217, 222 (3d Cir. 2014). This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250-57 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587-89 (1986). Only if this threshold is met may the cause of action proceed. See Pappas, 331 F. Supp. 2d at 315.

DeGeorge brings his federal constitutional claims under 42 U.S.C. § 1983. Section 1983 creates a cause of action to redress constitutional wrongs committed by state officials. 42 U.S.C. § 1983. The statute is not a source of substantive rights, but serves as a mechanism for vindicating rights otherwise protected by federal law. See Gonzaga Univ. v. Doe, 536 U.S. 273, 284-85 (2002); Kneipp v. Tedder, 95 F.3d 1199, 1204 (3d Cir. 1996). To state a Section 1983 claim, plaintiffs must show a deprivation of a "right secured by the Constitution and the laws of the United States . . . by a person acting under color of state law." Kneipp, 95 F.3d at 1204 (quoting Mark v. Borough of Hatboro, 51 F.3d 1137, 1141 (3d Cir. 1995)).

### III. Discussion

Defendants advance two arguments in their motion for summary judgment: that DeGeorge failed to exhaust administrative remedies and that DeGeorge's retaliation claim fails on its merits. We consider these arguments *seriatim*.

### A. Exhaustion

Under the Prison Litigation Reform Act ("PLRA"), prisoners complaining about the conditions of their confinement must exhaust available administrative remedies before they may file suit in federal court. 42 U.S.C. § 1997e(a). The PLRA requires proper exhaustion, meaning plaintiffs must administratively grieve their claims in accordance with the procedural rules of the prison in which they are incarcerated. Downey v. Pa. Dep't of Corr., 968 F.3d 299, 305 (3d Cir. 2020) (citing Woodford v. Ngo, 548 U.S. 81, 88 (2006)). Failure to exhaust administrative remedies is an affirmative defense that defendants must plead and prove; it is not a pleading requirement for plaintiffs. Jones v. Bock, 549 U.S. 199, 216 (2007).

A prisoner is only required to exhaust administrative remedies that are "available." Rinaldi v. United States, 904 F.3d 257, 268 (2018) (citing Woodford, 548 U.S. at 93). An administrative remedy is unavailable, and administrative exhaustion is thus excused, in three situations: "(1) when 'it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates'; (2) when it is 'so opaque that it becomes, practically speaking, incapable of use,' such as when no ordinary prisoner can discern or navigate it; or (3) when 'prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation.'" Id. at 266-67 (quoting Ross v. Blake, 578 U.S. 632, 643-44 (2016)).

Exhaustion of administrative remedies in the DOC is governed by the three-step process outlined in the DOC's grievance policy, DC-ADM 804. (See Doc. 25-6).[3] Under DC-ADM 804, a prisoner must first submit a written grievance within fifteen days from the date of the incident. Id. § 1(A)(8). DC-ADM 804 provides that the grievance must include "a statement of the facts relevant to the claim," "identify individuals directly involved in the events," and "specifically state any claims [the inmate] wishes to make concerning violations of Department directives, regulations, court orders, or other law." Id. § 1(A)(11). Next, the prisoner must submit a written appeal to an intermediate review level within fifteen working days. Id. § 2(A)(1)(a). Finally, the inmate must submit an appeal to the Secretary's Office of Inmate Grievances and Appeals ("SOIGA") within fifteen working days. Id. § 2(B)(1)(b).

Defendants argue that they are entitled to summary judgment because record evidence establishes that DeGeorge failed to appeal any of the grievances relevant to this case through all stages of appeals required by DC-ADM 804. (Doc. 26 at 14-18). DeGeorge argues in both his complaint and his opposition to the motion for summary judgment that exhaustion is excused because defendants' threats and other actions rendered the grievance process unavailable to him. (Doc. 1 at 7; Doc. 27 at 6-8). In support of his unavailability argument, DeGeorge attaches a declaration from himself, wherein he incorporates all the statements from his complaint regarding his interactions with defendants. (Doc. 28 at 1). Defendants

---

[3] Doc. 25-6 is a copy of DC-ADM 804, which was attached as Exhibit F to defendants' motion for summary judgment.

9

respond that this declaration should be disregarded under the "sham affidavit" rule because it is self-serving and conclusory and simply repeats the allegations of his complaint. (Doc. 33 at 4-6).

The court finds that summary judgment for failure to exhaust administrative remedies is precluded because there are genuine disputes of material fact as to whether the grievance process was available to DeGeorge. DeGeorge asserts in his complaint—and swears in a declaration attached to his summary judgment brief—that Knapp threatened DeGeorge with falsified misconduct charges if DeGeorge did not withdraw his grievances against Knapp and Seymour, and that Knapp told DeGeorge that he "shredded" a grievance that DeGeorge was attempting to file against the defendants. (See Doc. 1 ¶¶ 17-22, 47; Doc. 28 at 1). DeGeorge has also provided a sworn declaration from Page-Jones attesting that he assaulted DeGeorge because Knapp coerced him to do so to deter DeGeorge from filing grievances. (Doc. 1 at 11). A reasonable finder of fact reviewing this evidence could conclude that defendants' actions rendered the administrative process unavailable to DeGeorge through "machination, misrepresentation, or intimidation." Rinaldi, 904 F.3d at 266-67 (quoting Ross, 578 U.S. at 643-44).

Defendants' argument to the contrary that DeGeorge's declaration should be disregarded under the sham affidavit rule is without merit. The sham affidavit rule allows a court to disregard a sworn declaration offered as evidence during summary judgment proceedings when the declaration "contradicts earlier deposition testimony without a satisfactory or plausible explanation." Daubert v. NRA Grp., LLC, 861 F.3d 382, 391 (3d Cir. 2017). The rule allows a court to disregard an

10

affidavit if it is "entirely unsupported by the record and directly contrary to other relevant testimony or if it's clear the affidavit was offered solely to defeat summary judgment." Id. (cleaned up) (citing Jiminez v. All American Rathskeller, Inc., 503 F.3d 247, 253-54 (3d Cir. 2007)). The sham affidavit rule only permits a court to disregard statements in an affidavit that contradict earlier sworn statements; affidavits that do not contradict an earlier statement cannot be disregarded under the sham affidavit rule. See SodexoMAGIC, LLC v. Drexel University, 24 F.4th 183, 210 (3d Cir. 2022).

DeGeorge's declaration cannot be disregarded under the sham affidavit rule because it is not contradictory to any earlier statements. It does not appear from the record before the court that defendants deposed DeGeorge or otherwise elicited any sworn statements from him. The only sworn statements from DeGeorge that are before the court are his complaint and his declaration offered at the summary judgment stage, which are entirely consistent with each other. In the absence of any earlier statement that contradicts DeGeorge's declaration, defendants' request to disregard the declaration amounts to nothing more than a request for the court to make a credibility assessment, which is not a permissible application of the sham affidavit rule. SodexoMAGIC, 24 F.4th at 210. Hence, because there is a genuine dispute of material fact as to whether the grievance process at SCI-Rockview was available to DeGeorge, we find that summary judgment for failure to exhaust administrative remedies is precluded.

**B.     Merits**

Claims that a defendant has retaliated against a plaintiff in violation of the First Amendment require proof that: (1) the plaintiff engaged in constitutionally protected conduct; (2) the defendant took retaliatory action against him that was sufficient to deter a person of ordinary firmness from exercising his constitutional rights; and (3) there was a causal connection between the protected conduct and the retaliatory action.  Mitchell v. Horn, 318 F.3d 523, 530 (3d Cir. 2003).  Causation may be pleaded by alleging either an unusually suggestive temporal proximity between the plaintiff's protected conduct and the defendant's allegedly retaliatory action or a pattern of antagonism coupled with timing.  Dondero v. Lower Milford Twp., 5 F.4th 355, 361-62 (3d Cir. 2021) (citing Lauren W. ex rel. Jean W. v. DeFlaminis, 480 F.3d 259, 267 (3d Cir. 2007)).  Causation may also be implied by "the record as a whole."  Id. (citing DeFlaminis, 480 F.3d at 267).  Even if a plaintiff establishes a prima facie retaliation claim, defendant prison officials "may still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest."  Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

DeGeorge's retaliation claim alleges generally that: (1) DeGeorge engaged in protected conduct by filing grievances against Seymour and Knapp; (2) defendants retaliated against him by filing false misconduct charges against him, planting contraband in his cell, and directing Page-Jones to assault him; and (3) there was a causal connection between his actions and the retaliatory acts.  Defendants assert

12

that DeGeorge cannot establish any of the elements of his retaliation claim and that they would also succeed on establishing the same decision defense.

### 1. Protected Conduct

Defendants first argue that DeGeorge cannot establish protected conduct because his grievances against Seymour and Knapp are frivolous, and the filing of frivolous grievances is not protected by the First Amendment. In DeGeorge's grievance against Seymour, he asserts that during a group meeting in the behavioral management unit, DeGeorge asked Seymour to investigate why a correctional officer removed his commissary "bubble sheet" from "the box" before it could be processed. (Doc. 25-2 at 3). Seymour allegedly responded that correctional officers did not touch commissary bubble sheets in the box. (Id.) DeGeorge then argued that Seymour was "wrong" and that correctional officers were responsible for removing the sheets from the box. (Id.) Seymour told DeGeorge to take it up with Knapp and then ended the group meeting. (Id.) The grievance alleges that Seymour unjustifiably ended the meeting, which effectively denied DeGeorge attendance credit. (Id.)

The hearing officer denied the grievance as frivolous because DeGeorge's question about the bubble sheet was disruptive to the meeting. (Id. at 1). Moreover, DeGeorge lacked any personal or subjective knowledge about what happened to his commissary request. (Id.) According to the response to the grievance, prison officials initially rejected DeGeorge's bubble sheet because DeGeorge filled it out using ink rather a #2 pencil as required by prison policy. (Id.) Defendants argue that because DeGeorge "knew that the instructions required him

13

to use a number two pencil to fill out those sheets" his "complaints that Lt. Seymour inappropriately removed him from group activities for arguing about these false issues" was frivolous. (Doc. 26 at 20).

In DeGeorge's grievance against Knapp, he alleges that he was moved to Level 2 status in the behavioral management unit on August 30, 2022, but that prison officials had not given him the privileges commensurate with such status during the seven days he had been granted the status. (Doc. 25-3 at 2). DeGeorge asserts that the relevant prison policy required him to be given those privileges and that Knapp improperly denied them. (Id.) The hearing officer denied the grievance as frivolous because the relevant policy gave officials "discretion" as to whether to grant the privileges DeGeorge sought, and "[i]n this particular case . . . the Unit Team did not feel DeGeorge had progressed to the point in the BMU program" that the privileges were warranted. (Id.) Defendants echo this rationale as to why the court should deem the grievance frivolous. (Doc. 26 at 20).

Although defendants are correct that frivolous grievances may not be considered protected conduct, see, e.g., McKee v. Rowe, No. 4:23-CV-15, 2024 WL 265867, at *3 n.43 (M.D. Pa. Jan. 24, 2024), the court cannot conclude as a matter of law that the grievances at issue in this case were frivolous. Defendants' argument that the Seymour grievance is frivolous presupposes that DeGeorge "knew" that he was required to complete commissary bubble sheets with a #2 pencil, but defendants have not offered any evidence in the summary judgment record to support this contention. As for the grievance against Knapp, it appears that DeGeorge filed the grievance because he misunderstood the relevant prison policy

14

as requiring prison officials to give him certain privileges, but the policy instead left the decision of whether to grant those privileges to the discretion of the officials. The court does not agree that this simple misunderstanding of the relevant prison policy renders his grievance frivolous.

### 2.     **Retaliatory Action**

Defendants next argue that DeGeorge's retaliation claim against Hayles fails because Hayles's alleged actions of planting pornography in DeGeorge's cell and subsequently retrieving it is not a sufficiently adverse action to support a retaliation claim.[4]  (Doc. 26 at 20-21).  The court finds this argument unpersuasive.  The court construes the complaint as raising a single claim of retaliation based on a pattern of retaliation by the defendants rather than asserting distinct retaliation claims against each defendant.  Hayles's alleged action of planting pornography in DeGeorge's cell to support a fabricated misconduct charge against DeGeorge was a part of the retaliatory pattern alleged by plaintiff.  We accordingly will deny this portion of the motion for summary judgment.

### 3.     **Causation**

Defendants argue that DeGeorge cannot offer any evidence to establish a causal connection between the filing of his grievances against Seymour and Knapp and defendants' allegedly retaliatory actions.  (Doc. 26 at 21-22).  The court

---

[4] Defendants concede that the other retaliatory actions alleged by DeGeorge—an assault and fabricated misconduct charges—are sufficient to support a retaliation claim.

disagrees. Page-Jones's declaration is by itself sufficient to defeat summary judgment on the issue of causation. Page-Jones attests, in relevant part:

> DeGeorge[5] had been filing grievances over the past 6 months or so and as a result him (Mr. Knapp) and Officer Hayles and others had been retaliating and setting him up, but now inmate DeGeorge had proof of this. Mr. Knapp said he wanted me to 'bang out (stab) inmate DeGeorge and hurt him bad.

(Doc. 1 at 11). A reasonable finder of fact viewing this evidence could conclude that the defendants had engaged in a pattern of retaliation against DeGeorge for his filing of grievances that culminated in Knapp directing Page-Jones to assault DeGeorge. Hence, DeGeorge has produced enough evidence of causation to survive summary judgment.

### 4. Same Decision Defense

Finally, defendants argue that DeGeorge's retaliation claim fails because a hearing officer found him guilty of misconduct for the 81 pages of pornography purportedly found in his cell, and that finding was adequately supported by a quantum of evidence. DeGeorge therefore would have been convicted regardless of the alleged retaliation. (Doc. 26 at 22-23).

Defendants' argument is without merit. Although defendants are correct that retaliatory misconduct claims ordinarily fail when there is some evidence to support the underlying misconduct charge, see, e.g., Nifas v. Beard, 374 F. App'x 241, 244

---

[5] Page-Jones's declaration includes DeGeorge's inmate number. The court has omitted the inmate number from the quoted language as a precautionary measure.

(3d Cir. 2010) (nonprecedential);[6] Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002), here the retaliation claim asserts that no pornography was actually recovered from the cell and that defendant Maines fabricated the evidence to support the misconduct charge being filed against DeGeorge.  Defendants cannot succeed on a same decision defense when DeGeorge asserts that the evidence itself was fabricated.

### C. Evidentiary Hearing

Having concluded that there are genuine disputes of material fact as to whether defendants can establish the affirmative defense of failure to exhaust administrative remedies, the court finds that an evidentiary hearing on the issue of exhaustion is warranted.  During the evidentiary hearing, the court will act as the finder of fact on the issue of exhaustion as permitted by Paladino v. Newsome, 885 F.3d 203, 210 (3d Cir. 2018) and Small v. Camden County, 728 F.3d 265, 271 (3d Cir. 2013).  In accordance with Paladino's notice requirements, the court will provide the parties an opportunity "to submit materials relevant to exhaustion that are not already" before the court prior to conducting the evidentiary hearing.  Paladino, 885 F.3d at 211.  A schedule for the submission of such evidence shall be included in the order scheduling the evidentiary hearing.

---

[6] The court acknowledges that nonprecedential decisions are not binding upon federal district courts.  Citations to nonprecedential decisions reflect that the court has carefully considered and is persuaded by the panel's *ratio decidendi*.

**IV.     Conclusion**

    We will deny defendants' motion for summary judgment and schedule this case for an evidentiary hearing on the issue of whether defendants can establish the affirmative defense of failure to exhaust administrative remedies.  We will additionally impose a schedule for the submission of evidence relevant to the issue of exhaustion prior to the evidentiary hearing.  An appropriate order shall issue.

       /S/ CHRISTOPHER C. CONNER
       Christopher C. Conner
       United States District Judge
       Middle District of Pennsylvania

Dated:     June 24, 2024